UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Handan Haxing Toys,

                    Plaintiff,              CV-05-1310 (CPS)

        - against -                          MEMORANDUM
                                             OPINION AND ORDER
  Elko (USA), Ltd.,

                    Defendants.

----------------------------------------X
SIFTON, Senior Judge.

        Handan Haxing Toys Co, Ltd. ("Handan Haxing")[1] commenced

this action for an order confirming a foreign arbitral award

against Elko (USA) Ltd. ("Elko") under the New York Convention on

the Recognition and Enforcement of Foreign Arbitral Awards of

June 10, 1958 (the "Convention") codified at 9 U.S.C. §201, *et.*

*seq.* Elko did not answer or otherwise move with respect to the

complaint within the time allotted for it to do so. Accordingly,

on September 14, 2005 Handan Haxing filed for a default judgment

pursuant to Federal Rule of Civil Procedure Rule 55(a). On

September 28, 2005 that default judgment was granted. Now before

this Court is Elko's motion to vacate that default judgement

pursuant to Federal Rules of Civil Procedure 55(c) and 60(b)(4).

For the reasons set forth below, Elko's motion is granted.

------------------------

        [1] Defendant renders the spelling of plaintiff's name as "Handan Haixin."
For purposes of this motion I use the plaintiff's spelling of its own name.

BACKGROUND

The following facts are taken from the submissions of the parties in connection with this motion, including the arbitration decision at issue. They are undisputed except where noted.

In February of 2000, Handan Haxing and Elko entered into a contract in Handan, China, under which Elko would purchase toys from Handan Haxing on a monthly basis. The contract also included provisions under which Elko would repay a pre-existing debt to Handan Haxing. The contract contained the following arbitration clause:

> Party A [Handan Haxing] and Party B [Elko] shall cooperate in good faith. In the event that any dispute arises from or in relation to the trade exchange between both parties, Party A and Party B shall (1) try to resolve such dispute through consultation and negotiation; (2) submit the dispute to arbitration authority of the People's Republic of China for determination.

Although each party initially performed under the contract, in August of 2000, Elko ceased to make payments under the contract. According to Elko it did so because the shipments of toys were unsatisfactory and in breach of the contract. On February 20, 2003, Handan Haxing submitted a written request for arbitration to the China International Economic And Trade Arbitration Commission ("CIETAC"). CIETAC accepted the dispute for arbitration and on March 17, 2003, sent a Notice of Arbitration to Elko via courier service at the address provided by Handan Haxing, specifically, 52-02 Grand Avenue, Maspeth, NY

11378. The courier service did not deliver the notice to a person
because of "incorrect address and telephone number" but rather
left the notice at the specified address. On April 14, 2004
CIETAC made a second attempt to deliver the Notice of Arbitration
to Elko via a service agent named Global Law Firm. All subsequent
arbitration notices were delivered via the same service.[2]

This method of service is permitted under CIETAC's
arbitration rules which provide that:

> If none of the respondent's domicile, habitual
> residence, place of business, office or the place
> stipulated by the respondent as the place of delivery
> of documents from the Petitioner or his arbitration
> representative can be found after making a reasonable
> inquiry by the Petitioner, following delivery to the
> respondent of the request for arbitration to the
> respondent' last known domicile, habitual residence,
> place of business or the place of delivery by
> registered mail or any other means by which the attempt
> to deliver it can be certified shall be deemed by
> CIETAC as satisfactory delivery."

Accordingly, CIETAC determined that Elko had been adequately
served with notice.

On July 16, 2003 the arbitral tribunal commenced hearing the
case. Handan Haxing presented evidence and attended the hearing.
Elko did not attend the hearing and submitted no evidence. On
September 9, 2003 the arbitral tribunal issued a written decision
in which it ordered Elko to pay the unpaid contractual payments,

---

[2] The trouble with delivery of notice stemmed from the fact that Elko,
unbeknownst to Handan Haxing had moved to a new address.

interest on those payments, legal fees of Handan Haxing, and the
costs of the arbitration.

On March 10, 2005 Handan Haxing filed a complaint in this
Court to enforce the foreign arbitration award. According to the
affidavit of service filed by Handan Haxing, the notice of
petition and petition were served on Elko by delivery to an
employee, identified as Laura Smith, at Elko's place of business,
52 39th St, 7th floor, Brooklyn, NY 11232. The employee was
identified as Laura "Smith" because she refused to provide her
last name to the process server. Elko disputes that it ever
received service or that it has any employee named Laura Smith.
After the time for Elko to answer had expired, Magistrate Go
ordered Handan Haxing to move for default judgment. Handan Haxing
did so on September 14, 2005. Notice of the motion for default
judgment was served on Elko on September 19, 2005. The motion did
not contain a return date.  On September 28, 2005 the default
judgment was granted, and a copy was sent to, and received by
Elko.

DISCUSSION

Elko now moves for an order vacating the default
judgment against it pursuant to Federal Rule of Civil Procedure
55(c) and 60(b). Rule 55(c) provides that "[f]or good cause shown
the court may set aside an entry of default judgment, and if
judgment by default has been entered, may likewise set it aside

in accordance with 60(b)." Defendant argues that the default
judgment should be vacated under Rule 60(b)(4) and under Rules
60(b)(1) and (6). Rule 60(b)(4) authorizes the court to relieve a
party from final judgment "when the judgment is void." Rule
60(b)(1) allows a court to vacate a judgment on the basis of
mistake, surprise, inadvertence, or excusable neglect. Rule
60(b)(6) allows a default judgment to be vacated for any other
justifying reason. A motion predicated on subsection four is
unique, however, in that "relief is not discretionary and a
meritorious defense is not necessary" as on motions made pursuant
to other 60(b) subsections. *Covington Indus. Inc. v. Resintex
A.G.,* 629 F.2d 730, 732 n.3 (2d Cir. 1980). Thus, "when a
judgment entered against the defaulting party is void, the Court
has no discretion and is compelled to grant the motion for the
reason that a void judgment cannot be enforced." *Wrobleski v.
Morrissette,* No. 96 CV 0182, 2000 WL 129184, at *1 (W.D.N.Y.
January 27, 2000).

"Valid service of process is a prerequisite to a district
court's assertion of personal jurisdiction over a defendant."
*American Institute of Certified Public Accountants v. Affinity
Card, Inc.,* 8 F.Supp.2d 372, 375 (S.D.N.Y. 1998)(citing *Omni
Capital Int'l v. Rudolk Wolff & Co., Ltd.,* 484 U.S. 97, 103
(1987). A judgment is void for lack of personal jurisdiction over
the defendant where service of process was not properly effected.

*See Peralta v. Heights Med. Ctr., Inc.,* 485 U.S. 80, 84-87, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988); *Velez v. Vassallo,* 203 F.Supp.2d 312, 317-18 (S.D.N.Y. 2002); *Fattarusso v. Levco Am. Import Co.,* 144 A.D.2d 626, 535 N.Y.S.2d 62, 63 (1988). Hence, "a judgment obtained by way of defective service of process is void . . . and must be set aside as a matter of law." *Howard Johnson International, Inc., v. Wang*, 7 F.Supp 2d 336, 339 (S.D.N.Y. 1998).

Service upon a domestic corporation is governed by Federal Rule of Civil Procedure 4(h)(1), which provides that service shall be effected

> in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.

Subdivision (e)(1) provides, in pertinent part, that service shall be effected "pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. Section 311 of the New York State Civil Practice Law and Rules provides that service upon a corporation shall be made by delivery

> upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.

C.P.L.R. § 311.1.

The affidavit of service in this case indicates that the process server delivered the notice to a "managing agent" of Elko named Laura Smith, so called because she refused to give her last name. The process server describes her as a white female with brown hair, about 5 feet 7 inches tall, weighing 150 pounds and approximately 39 years old. Elko states that it has no managing agent nor any employee named Laura Smith. Elko does not state whether it has any employees named Laura or any employees meeting this physical description.

As to the identity of the recipient of service, "service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." *Solospar Inc. v. Equinox Fitness Center Inc.,* 1998 WL 386179, *4 (S.D.N.Y. 1998) (internal citation omitted). The process server cannot be expected to know the corporation's internal practices. "Thus, the process server may rely on corporate employees to identify the proper person to accept service." *Zen Music, Inc. v. CVS Corp.,* 1998 WL 912102, *2-3 (S.D.N.Y. 1998). In such circumstances, if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained. *Fashion Page, Ltd. v. Zurich Ins. Co.,* 50 N.Y.2d 265, 428 N.Y.S.2d 890, 893-94 (N.Y. 1980). This standard prevents a corporation from "complain[ing] that the summons was

delivered to the wrong person when the process server has gone to its offices, made proper inquiry of defendant's own employees, and delivered the summons according to their directions." *Kuhlik v. Atlantic Corp., Inc.,* 112 F.R.D. 146, 148 (S.D.N.Y.1986) (quoting *Fashion Page,* 428 N.Y.S.2d at 893).

The general rule is that when a defendant makes a motion to dismiss for insufficiency of service of process under Federal Rule of Civil Procedure 12(b)(5), the plaintiff bears the burden of proving adequate service. *See, e.g., Burda Media, Inc. v. Viertel* 417 F.3d 292, 299 (2d Cir. 2005). However, the Second Circuit recently held that, "on a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur." *Id.* In the present case it is undisputed that defendant had actual notice of the suit before the entry of a default judgment since the defendant admits receiving the notice of motion for the default judgment. Thus, the burden is on the defendant to prove that the original service of process was deficient. Defendant has not done so.

In the present case, the defendant has not provided sufficient evidence to determine what happened when Handan Haxing's process server interacted with "Laura Smith." For

example, the defendant has not provided affidavits which would elucidate their interaction. The affidavit of service states only that "Laura Smith" refused to provide her last name. It is impossible to determine whether the process server reasonably relied on "Laura Smith's" representations to determine that she was authorized to receive process. Nor is there any basis from which to infer that Laura Smith refused to accept service or to direct the process server to an agent on whom process could properly be served. Since "a signed affidavit of service from a private process server . . . creates a rebuttable presumption that service was valid," *Bey v. U.S. Postal Service*, 2005 WL 2923516, *1. n.1 (S.D.N.Y. 2005), and since defendant's have submitted no evidence from which to rebut this presumption, service of process is deemed valid.

Accordingly, I next turn to Elko's argument that even if it was properly served the judgment should be vacated because of its excusable neglect in failing to respond to Handan Haxing's motion for a default judgment. The Second Circuit has set forth three criteria for determining whether to set aside a default judgment: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the nondefaulting party if relief is granted. *American Alliance Ins. Co., Ltd., v. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir. 1996)(quoting *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.

1982). Given this Circuit's strong preference "for resolving
disputes on the merits," *Enron Oil Corp v. Diakuhara,* 10 F.3d 90,
95 (2d Cir. 1993), all doubts must be resolved in the defendant's
favor. *See Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.
1983)(stating that all doubts should be resolved in favor of
those seeking relief from default.)

<u>Willful Default</u>

The Second Circuit has interpreted willfulness in the
default judgment context "to refer to conduct that is more than
merely negligent or careless." *SEC v. McNulty,* 137 F.3d 732, 738
(2d Cir.1998). A default may also be found willful where the
conduct of the litigant or counsel "was egregious and was not
satisfactorily explained." *Id.* at 739-39; *Gonzalez v. City of
New York,* 104 F.Supp.2d 193, 196 (S.D.N.Y. 2000).

Although service of process on the defendant was legally
sufficient, construing the facts in favor of the defendant, it
first received notice of the suit on September 19, 2005 when it
was served with a notice of motion for default judgment. Defense
counsel says, somewhat implausibly, that he was under the
impression that because the motion contained no return date, he
had no obligation to investigate or act on the matter
immediately. Defense counsel did take action one month later, on
October 21, 2005 when he filed the motion to set aside the
default judgment. Where as here, "there is no evidence that the

[] Defendants were aware of the pendency of this action until shortly before they filed the instant application to set aside their default . . . the []Defendants' statements that they lacked knowledge of this action raise sufficient doubts as to whether their defaults were willful to warrant vacatur of their defaults." *Dixon v. Ragland*, 2005 WL 2649484, *2 (S.D.N.Y. 2005). In the present case, defense counsel's misunderstanding of the implications of a motion filed without a return date, indicate that although his failure to act may have been negligent, it was not wilful.

<u>Meritorious Defense</u>

To establish the existence of a meritorious defense, a party seeking relief from default judgment must submit evidence which, "if proven at trial would constitute a complete defense." *Enron Oil Corp.,* 10 F.3d at 98; *see also, American Alliance Insurance Co.,* 92 F.3d at 61 ("A defense is meritorious if it is good at law so as to give the fact finder some determination to make."). A defendant need not prove the defense conclusively, *McNulty,* 137 F.3d at 740; however, a defendant "must do more than make conclusory denials." *Enron Oil Corp.,* 10 F.3d at 98.

Here, defendant alleges that it has a meritorious defense because it never received notice of the foreign arbitration and accordingly did not defend itself in that action and because the arbitration commission chosen by the plaintiff was an

inappropriate forum because it was located in Beijing, while other available arbitration authorities, such as those in the Hebei Province would have been more convenient for the defendant.

"The goal of the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards], and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 494 (2d Cir. 2002). Accordingly, the Convention limits the power of courts to review an arbitration, *see Amoco Overseas Oil Co., v. Astrir Navigation Co.,* 490 F.Supp. 32, 37 (S.D.N.Y. 1979), and "the burden of proving that an award should be overturned is on the party challenging the enforcement and recognition of the award." *La Societe Nationale Pour La Recherche, La Production, Le Transport, La Transformation et la Commercialisation Des Hydrocarbures v. Shaheen Natural Resources Co., Inc*., 585 F.Supp. 57, 61 (S.D.N.Y. 1983)(citing *Imperial Ethiopian Government v. Baruch-Foster Corp.,* 535 F.2d 334, 336 (5th Cir. 1976). Section 207 provides that "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition

or enforcement of the award specified in the convention." 9 U.S.C. §207. Article V of the Convention provides that recognition and enforcement may be refused only in certain narrowly prescribed situations.

One such situation is described in Article V(1)(b), which provides that an arbitration award will not be recognized or enforced when "the party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." This defense "essentially sanctions the application of the forum state's standards of due process." *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA),* 508 F.2d 969, 975-76 (2d Cir.1974). Due process rights are "entitled to full force under the Convention as defenses to enforcement." *Id.* Under U.S. law, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). "Accordingly, if [defendant] was denied the opportunity to be heard in a meaningful time or in a meaningful manner, enforcement of the Award should be refused pursuant to Article V(1)(b)." *Iran Aircraft Industries v. Avco Corp.,* 980 F.2d 141, 145 -146 (2d Cir. 1992).

It is undisputed that defendant never received notice of the arbitration and accordingly did not attend or defend its interests there. Construing the facts liberally and in favor of the defendant, plaintiff may have made an insufficient effort to obtain the proper address for the defendant so as to notify it of the arbitration and accordingly, the failure to notify the defendant may have violated defendant's due process rights. Thus, construing defendant's arguments liberally, I find that sufficiently meritorious defense has been raised. Accordingly, I do not address defendant's second argument that the particular arbitration commission chosen was improper.

Prejudice

Finally, plaintiff's only argument of prejudice is that it will be delayed in receiving funds owed to it. Delay alone is insufficient to establish prejudice. *See Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983). The Court has no reason to believe, nor has the Plaintiff asserted, that the "[p]laintiff's ability to establish its case has suffered from the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion." *Time Warner Cable v. Cabada,* 1997 WL 797533, at *2 (E.D.N.Y. 1997). Thus, this factor weighs in favor of vacating the default judgment.

Accordingly, weighing all three factors, I find that the defendant's motion to vacate the default judgment should be granted.

## CONCLUSION

For the reasons set forth above the defendant's motion to vacate the default judgment is granted.

The Clerk is directed to furnish a copy of the within to the parties.

SO ORDERED.


Dated :    Brooklyn, New York

           February 13, 2006




              By: /s/ Charles P. Sifton (electronically signed)
                  United States District Judge